IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JIM MILLER,                                            3:15-cv-00571-AC

            Plaintiff,                           **OPINION AND ORDER**

    v.

ERIC OLSEN, DOES 1 THROUGH 5,
EUTERPE, INC., an Oregon domestic
corporation; SOMERSET, LLC, an
Oregon Limited Liability Company,

            Defendants.

---

ACOSTA, Magistrate Judge:

    This matter comes before the court on defendants Eric Olsen, Does 1 through 5, Euterpe

Inc., and Somerset, LLC's (collectively, "Defendants") motion (ECF No. 25) for summary

judgment on plaintiff Jim Miller's ("Plaintiff") lawsuit (ECF No. 1), filed in this court on April

6, 2015. Upon consideration of the motion and the entire file, the motion is GRANTED.

*Background*

    Plaintiff filed this lawsuit on April 6, 2015, alleging violations of the Employee

Retirement Income Security Act ("ERISA"), breach of contract, promissory estoppel, breach of

fiduciary duty, and fraud. (ECF No. 1.) Plaintiff is a 62-year-old construction supervisor who

has worked in the residential construction industry for the last 30 years. Defendant Euterpe, Inc. ("Euterpe") is a residential construction company based in Monmouth, Oregon and owned by defendant Erik Olsen ("Olsen"). Between August 2004 and August 2013, Euterpe employed Plaintiff as a construction supervisor. Euterpe's 2004 employment agreement with Plaintiff included terms of salary, health insurance, paid vacation, paid sick time, and mileage reimbursement. Euterpe did not have a retirement plan at the time of Plaintiff's hire.

In 2006, Olsen created an employee incentive program called the Equity Growth Plan ("EGP") to increase his employees' compensation and encourage longevity. To that end, Olsen formed Somerset, LLC ("Somerset") and purchased a building in Somerset's name. The building was Somerset's sole asset. Olsen then offered Plaintiff and a number of other employees to participate in the EGP by accepting a phantom ownership interest in Somerset, which provided an interest in the building's equity. Plaintiff became a participant in the EGP on January 1, 2008. (ECF No. 33, ¶5.)

The EGP's terms provide that participants are chosen at the "sole and absolute discretion" of Euterpe's Board of Directors and are issued "shares," which represent an ownership interest in Somerset. (ECF No. 26-2, p. 1.) The EGP's sole trust asset is "Somerset, LLC." (ECF No. 26-2, p. 2.) When a participant reaches 62 years of age, the participant automatically becomes fully vested and "shall be entitled to receive 100% of the Retirement Value of the Participant's Shares." (ECF No. 26-2, p. 3.) Although participants are permitted to withdraw benefits early, they may do so subject to penalties. *Id.* The EGP also provides a detailed formula for the calculation of benefits. (ECF No. 26-2, p. 4.)

Olsen sold Somerset's sole asset in 2013. For reasons unrelated to this lawsuit, Euterpe terminated Plaintiff's employment in August, 2013. Following Plaintiff's termination, Euterpe

issued a check to Plaintiff for $10,000 which represented his total benefits under the EGP. (ECF No. 39, p. 3.) Plaintiff did not accept the tender, and brought this lawsuit.

*Legal Standard*

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 988 (9th Cir. 2006) (*quoting Hunt v. Cromartie,* 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting* FED. R. CIV. P. 56(e)). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (*quoting Angel v. Seattle-First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981)).

*Discussion*

## I.    ERISA Claims

The viability of Plaintiff's ERISA claims turns on whether the EGP qualifies as a plan governed by ERISA. There are few formal requirements for the creation of an ERISA plan. *See Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir. 1985) ("Although ERISA contains numerous requirements that a plan must adhere to – a written instrument, named fiduciaries, public reports, etc. – these requirements are not part of the definition of 'plan.'") (citations

omitted).   However, an ERISA plan must invoke an "ongoing administrative program," *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987), and must enable reasonable persons to "ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Winterrowd v. American General Annuity Ins. Co.*, 321 F.3d 933, 938-39 (9th Cir. 2003) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).

Defendants ask the court to dismiss plaintiff's ERISA claims because the EGP does not qualify as an ERISA plan, arguing: (1) its express terms do not contemplate a method of funding; (2) its express terms do not contemplate an ongoing administrative scheme; and (3) its primary purpose is not to provide deferred compensation.  Defendants also argue that the EGP does not qualify as an ERISA plan based on the circumstances surrounding its creation.

*1. Source of Financing*

Plaintiff maintains that the EGP qualifies under ERISA in part because the EGP terms include a method of funding by providing for "annual equity contributions."  He argues that the EGP is funded by annual equity contributions of 5 percent in between appraisals of Somerset.

The terms of the EGP, however, contain no description of a policy or method for funding a pension plan.  Rather, the Section 4(b)(6) provides only for a method of valuing an employee's shares.

> "Total Retirement Value of all SHARES" is an amount equal to 90% of the appraised value of [Somerset], multiplied by the ratio of the Total Face Value of all SHARES to the Corporation's equity contributions to the LLC.  An appraisal of the LLC shall be conducted at least once every five years.  On each anniversary of the most recent appraisal, the Total Retirement Value of all SHARES shall increase by 5% until another appraisal is conducted.

(ECF No. 26-2, p. 2.)  The fact that the value of shares may increase by 5 percent during the years between appraisals does not constitute a "method of funding," but a method of tracking increase in value over time in the years between appraisals of the building owned by Somerset.

Under the EGP, if the subsequent appraisal is less than the value of the shares, the value of all shares decreases. Contrary to Plaintiff's contention, then, the EGP does not provide for source of financing that a reasonable person could ascertain; nothing in the plan identifies how money is placed in a fund for later distribution. Therefore, the plan fails to satisfy this condition. *Winterrowd*, 321 F.3d at 938-39 (the terms of an ERISA plan must enable reasonable persons to ascertain the plan's source of financing).

### 2. Ongoing Administrative Scheme

The Ninth Circuit has stated that "a relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12 (1987)). An ongoing administrative scheme requires an employer to apply more than "some modicum of discretion." *Velarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997). In *Velarde*, the Ninth Circuit stated that an ongoing administrative scheme requires "enough ongoing, particularized, administrative, discretionary analysis" to make a plan subject to ERISA. *Id.* An employer's exercise of "slight" discretion in determining whether an employee met the eligibility requirements for severance pay under the plan was not sufficient to show an ongoing administrative scheme. *Id.*

Here, paragraph five of the EGP provides guidelines for administering the plan, including (1) an automatic vesting schedule, describing when a participant becomes 25%, 50%, and 100% vested; (2) a provision that the Board of Directors may allow a participant to borrow money from Euterpe or Somerset against his or her shares; and (3) the requirement that the Board to request an appraisal of Somerset's assets every five years.[1] (ECF No. 26-2, p. 3.)

---

[1] The EGP also provides that it "may be amended at any time and from time to time and may be discontinued at any time by the Board of Directors," and that questions of interpretation

These guidelines provide parameters that control when and how payments can be made from the plan to participants. Like the plan at issue in *Delaye*, the EGP guidelines contemplate little by way of ongoing management or discretionary analysis; they merely provide a formula for calculating the value of shares, which allows for no discretion in its administration. *Delaye*, 39 F.3d 235 (9th Cir. 1994), (ECF No. 26-2, p. 2.)

On this record, the court finds the EGP's express terms do not provide ongoing, particularized, administrative, discretionary analysis sufficient to qualify the EGP as an ERISA plan. *Velarde*, 105 F.3d at 1317. Any discretion exercised by Defendants in determining whether an employee met the eligibility requirements for the EGP is not sufficient to show an ongoing administrative scheme under *Verlarde*. The EGP therefore also fails to meet the "ongoing administrative scheme" criterion to qualify as an ERISA plan. *Delaye*, 39 F.3d at 237.

### 3. *Primary purpose*

The Ninth Circuit recently stated that the "paramount consideration" in determining whether a plan is subject to ERISA is whether the primary purpose of the plan is to provide deferred compensation. *Rich v. Shrader*, No. 14-55484, 2016 WL 2994736, at *4 (9th Cir. May 24, 2016). The *Rich* opinion held that a retirement plan whose primary purpose was to provide capital to the firm and whose secondary purpose was to "provide a wealth creation vehicle for the partners," was not a qualified plan under ERISA, because its primary purpose was not to provide deferred compensation to its members. *Id.* at *4. The *Rich* court further noted that the administrators of the plan at issue held "sole discretion" to "grant Stock Rights in such amounts and to such Officers as it determines." *Id.* at *4. The discretionary administrative scheme provided further evidence that the plan at issue was not covered under ERISA. Finally, the *Rich*

---

or application are to be determined by the board of directors or a committee selected at the discretion of the board. (ECF No. 26-2, p. 4.)

court noted that the fact that participants in the plan could hold their shares until the end of employment was not sufficient to establish ERISA coverage, again because its primary purpose was not to provide deferred compensation. *Id.* at *5.

Here, the EGP's primary purpose was to reward employees and encourage longevity by creating shares that employees could cash-out upon termination of their employment with the company.   Like the plan in *Rich*, the EGP's primary purpose was not to provide deferred compensation, even though participants could hold their shares until the end of their employment.  Further, like the plan in *Rich*, participation rights in the EGP were determined at the total discretion of its administrators.  For all of these reasons, EGP fails to meet the primary purpose criterion articulated by the Ninth Circuit.

In sum, applying the EGP's express terms, the court finds that it is not subject to ERISA because its primary purpose is not to provide deferred compensation, and its terms do not include a "policy or method of funding" or an "ongoing administrative scheme."  (ECF No. 26-2.) Based on an examination of its express terms, the EGP is not subject to ERISA.  *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1443 (9th Cir. 1995).

### 4. Surrounding Circumstances Test

Plaintiff contends alternatively that the EGP is subject to ERISA based on the circumstances surrounding his enrollment in the EGP.  Plaintiff contends Olsen represented to him that the "purpose of the plan was to provide [him and others] with pension benefits commensurate with [his] long-term commitment to Euterpe, and to provide an opportunity for [him and others] to share in the profits and growth enjoyed by Euterpe."  (ECF No. 1, ¶ 11.) Plaintiff also states that he relied on "Olsen's representation that the [EGP] was being funded in a manner commensurate with the profits and growth enjoyed by Euterpe." *Id.*

In *Donovan v. Dillingham*, 688 F.2d 1367 (9th Cir. 1982), the Ninth Circuit articulated a test that applies "where a formal plan is absent and the question remains whether a de facto plan has been created." *Cinelli*, 61 F.3d at 1443. *Donovan* provides that a "'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373.

The Ninth Circuit has stated, however, that the *Donovan* "surrounding circumstances" inquiry is limited to instances where a formal written plan is absent and the question remains whether a de facto ERISA plan exists. *Cinelli*, 61 F.3d at 1443. Here, the EGP is a formal plan and therefore must be evaluated by its express terms to determine whether it is subject to ERISA. *Id.* at 1443; *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1523 n.1 (9th Cir. 1993). Because the EGP is based expressly on a written plan, the *Donovan* test does not apply.

Even if the EGP could be considered as evidence of surrounding circumstances in the *Donovan* test, the facts do not establish that a de facto plan has been created. Here, the source of financing for the EGP cannot be determined from the EGP or other communications between Olsen Plaintiff. Thus, even when the surrounding circumstances test is applied, the EGP does not qualify as a plan under ERISA.

In sum, Plaintiff's ERISA claims fail as a matter of law because he fails to establish that the EGP was subject to ERISA. Because there is no genuine issue of material fact as to whether the EGP qualifies as an ERISA plan, Defendants' motion is granted with respect to Plaintiff's ERISA claims.

/////

/////

II.     Breach of Contract Claim

To prevail on his breach of contract claim, Plaintiff must prove by a preponderance of evidence (1) the existence of a contract; (2) the relevant terms of the contract; (3) Plaintiff's full performance and lack of breach; and (4) the Defendants' breach resulting in damage.  *Slover v. Oregon State Bd. Of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996).  Defendants argue that Plaintiff's claim for breach of contract should be dismissed because no contract other than the EGP ever existed between the parties, and Defendants abided by the terms of the EGP at all times.

Plaintiff alleges that a contract was formed through the parties' words and actions when Olsen told Plaintiff that he was eligible for retirement.  As discussed above, Olsen invited Plaintiff to become a participant in the EGP in 2007.  At that time Olsen told Plaintiff he was "now eligible for retirement" and handed him an envelope containing two stock certificates and a copy of the EGP.  (ECF No. 26-1, pp. 8, 11.)  Plaintiff did not read the EGP and assumed that he was receiving shares of stock in Euterpe.  (*Id.* at pp. 9-10; ECF No. 36, p. 67.)  At his deposition, Plaintiff testified that he believed that he was a participant in a bona fide retirement plan based on Olsen's statements and conduct described above.  (ECF No. 36, p. 67.)  Plaintiff continued to work for Euterpe under the belief that his terms of employment included a retirement benefit plan. *Id.*

By contrast, former Euterpe employees Tyler Reid and Martha Anderson also participated in the EGP and understood that the EGP was not a retirement or pension plan.  (ECF No. 28, 29.)  Both Ms. Anderson and Mr. Reid understood that when they enrolled in the EGP they were receiving phantom shares in Somerset, but not an actual ownership interest in either Somerset or Euterpe. *Id.*  While Plaintiff was enrolled in the EGP on January 1, 2008, he did not

speak with anyone about the possibility of a retirement program until January, 2013.[2]  (ECF No. 26-1, pp. 13, 15-16.)  When Plaintiff requested information about the terms of the plan, Olsen responded that everything Plaintiff needed to know was in the EGP booklet, in the envelope he'd given him in 2007.  *Id.* at p. 22-23.

This record does not contain an allegation that Defendants promised or formed a contract with Plaintiff for pension benefits.  The evidence shows that a contract existed between the parties, governed by the terms of the EGP.  Defendants did not breach the terms of the EGP because they tendered the amount owed to Plaintiff upon his discharge.  Therefore Defendants have not breached the contract formed under the EGP, and Plaintiff has not incurred any damages as a result.  In sum, Plaintiff has not pleaded sufficient facts to show a genuine issue of material fact as to whether a contract with terms other than those in the EGP existed between the parties.  Defendants' motion is therefore granted with respect to Plaintiff's breach of contract claims.

III.    Promissory Estoppel

Promissory estoppel requires the promisee to establish: (1) a promise; (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred; (3) actual reliance on the promise; and (4) a substantial change in position by the plaintiff as a result of his or her reliance.  *Bixler v. First Nat. Bank of Oregon*, 49 Or. App. 195, 199-200 (1980).  Defendants argue that Plaintiff has not pleaded facts to satisfy the elements of promissory estoppel.

---

[2] At deposition, Plaintiff testified that he was not told that Euterpe had a retirement program prior to beginning his employment there in 2004. (ECF No. 26-1, p. 6.)  Plaintiff maintains he has no recollection of any discussion of a retirement plan at Euterpe prior to his acceptance of employment there in 2004. *Id.* at p. 18.

Here, Plaintiff testified that he relied on Defendants' statements, and that they created an expectation of pension benefits that led him to not seeking outside employment. As discussed above, however, the record does not contain a promise of pension benefits. While Defendant Olsen told Plaintiff "you are now eligible for retirement," a reasonable factfinder could not determine that Defendants promised to provide pension benefits to Plaintiff on these facts alone. Further, even if Olsen's statement of retirement eligibility constituted a promise, no reasonable promisor in Olsen's position would foresee that his statement could induce Plaintiff to remain employed with Euterpe, not seek other employment, or otherwise refrain from taking steps to plan for his retirement. Because Plaintiff has not pled sufficient facts to support the first two elements of his promissory estoppel claim, Defendants' motion for summary judgment on Plaintiff's promissory estoppel claims is granted.

IV.    Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty between the parties; (2) a breach of duty arising from that relationship; and (3) identifiable loss or injury caused by the breach. *Lindland v. United Business Investments, Inc.*, 298 Or. 318, 327 (1984). Defendants argue that (1) no fiduciary duty existed between the parties; and (2) to the extent that there was such a duty, Defendants were not in breach.

Plaintiff argues that Defendants' words and conduct created a fiduciary duty that was breached because Defendants failed to manage the trust in a way that would ever provide something akin to a pension or retirement benefit, failed to make regular equity contributions to the plan, and sold Somerset's sole trust asset. As discussed above, however, the contract formed between the parties was governed by the express terms of the EGP. Therefore Plaintiff has not

established that Defendants owed him a fiduciary duty to manage the trust so as to provide pension benefits.

A reasonable factfinder, however, could determine that the terms of the EGP create a fiduciary duty insofar as they dictate payment terms and rules for administering the plan. (ECF No. 26-2, pp. 2-3.). It is undisputed, however, that after Plaintiff was discharged Defendants calculated and tendered an amount exceeding[3] the total amount due to Plaintiff under the EGP. (ECF No. 39.) On this record, any fiduciary duty was discharged according to the terms of the EGP after Plaintiff ceased working for Defendants in 2013.[4]

V.    Fraud claim

To establish fraud, Plaintiff must plead and prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or his recklessness in that respect; (5) the defendant's intent that plaintiff should act on it in the manner reasonably contemplated; (6) the plaintiff's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) damages. *Gerke v. Burton Enterprises, Inc.*, 80 Or. App. 714, 718 (1985). A claimant alleging fraud has the burden of proving the elements by clear and convincing evidence. *Miller v. Protrka*, 193 Or. 585, 592 (1951). Defendants argue that Plaintiff has failed to plead facts to establish the elements of a fraud claim.

Here, Plaintiff claims that Defendant Olsen made material misrepresentations and committed fraud when he informed Plaintiff that he was eligible for retirement, leading him to

---

[3] Defendants calculated the value of Plaintiff's 20,000 shares on August 9, 2013 at $12,841; because they were only 50 percent vested under the EGP, the value of Plaintiff's shares on his discharge was $6,420. (ECF No. 27-1.)

[4] Further, while Plaintiff contends that the sale of Somerset's sole trust asset left Somerset "essentially worthless," the members of Somerset viewed the transfer of the building's ownership as a sound business decision to protect the value of the LLC against falling real estate prices. (ECF No. 39, pp. 3-5.) There is no evidence to the contrary in the record. The sale of Somerset's asset was thus in good faith and does not constitute a breach of fiduciary duty.

believe that he was part of a retirement plan. However, Plaintiff testified at his deposition that he had only one conversation with Olsen about the terms of the EGP, and cannot recall what he was told during that conversation; he was merely left with the impression that he was receiving shares of stock in a company, which he assumed to be Euterpe. (ECF 26-1, pp. 5-6.) On this record, Plaintiff has not met the heightened pleading standard to support a claim that Defendants made false statement about the EGP, or suggested that it contained sufficient assets to provide meaningful retirement benefits commensurate with the performance of Euterpe. Defendants' motion is granted and Plaintiff's fraud claim is dismissed.

### Conclusion

For the reasons stated above, Defendant's motion (ECF No. 25) is GRANTED and Plaintiff's Complaint (ECF No. 1) is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this ___ day of August, 2016.

JOHN V. ACOSTA
United States Magistrate Judge